IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KAFIA DENNIS, *et al.*,

    *Plaintiffs*,

    v.

ANTONY BLINKEN, *et al.*,[1]

    *Defendants*.

\*

\*

\*

\*

\*

Case No. 1:22-cv-02522-JRR

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiffs Kaifa Dennis and Souriah Dennis are husband and wife. They married on December 30, 2011, in Liberia. (ECF No. 1 ¶ 4.) Plaintiff Kaifa Dennis (hereinafter referred to as "Plaintiff-husband") is a lawful permanent resident of the United States. *Id.* ¶ 2. Plaintiff Souriah Dennis (hereinafter referred to as "Plaintiff-wife") lives in Monrovia, Liberia, and intends to immigrate to the United States to live with her husband and child. *Id.* ¶ 3.

Plaintiffs filed this action alleging that Defendants have unreasonably delayed scheduling and adjudicating Plaintiff-wife's visa application at the United States Consulate in Monrovia, Libera. (ECF No. 1 ¶ 3.) The Complaint names eight Defendants: (1) Secretary of State, Antony Blinken, (2) Attorney General of the United States, Merrick Garland, (3) Deputy Secretary of State, Wendy R. Sherman, (4) Assistant Secretary of State for Consular Affairs, Rena Bitter, (5) Legal Adviser within the Department of State ("DOS"), Richard Visek, (6) United States Ambassador to Liberia and an official within DOS, Honorable Michael McCarthy, (7) Deputy

---

[1] The Complaint and docket sheet misspell Defendant Antony Blinken's name.

Chief of Mission at the United States Embassy in Monrovia, Liberia and DOS officer, Joel Maybury, and (8) Director of the National Visa Center and DOS officer, Phillip Slattery. (ECF No. 1 ¶¶ 27-33.)

Pending before the court is Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 6; "the Motion.") The court has read all papers. No hearing is necessary. Local Rule 105. (D. Md. 2021). For the reasons that follow, by accompanying order, the Motion will be granted.

## II.    BACKGROUND

### A.    I-30 Petition for Alien Relative

"The Immigration and Nationality Act ('INA') authorizes the issuance of immigrant visas to certain relatives of U.S. Citizens." *Nusrat v. Blinken*, No. CV 21-2801 (TJK), 2022 WL 4103860, at *1 (D.D.C. Sept. 8, 2022) (citing 8 U.S.C. §§ 1101, *et seq.*). "To obtain permanent resident status for qualifying foreign relatives under the INA, a U.S. citizen must submit Form I-130 ('Petition for Alien Relative') to U.S. Customs and Immigration Services ('USCIS')." *Id.* (citing 8 U.S.C. § 1154). "If USCIS approves the petition, it is forwarded to the State Department's National Visa Center, and the 'foreign national is notified to go to the local U.S. consulate in [her] country to complete visa processing, which includes submitting [a Form DS-260 visa application] and appearing for an interview with a consular officer.'" *Id.* (quoting *Ghadami v. United States Dep't of Homeland Sec.*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *1 (D.D.C. Mar. 19, 2020)). "The consular officer must then either issue or refuse the visa." *Id.*

B. **Instant Case**[2]

Plaintiffs allege that on February 4, 2019, Plaintiff-husband filed an I-130 Petition on behalf of his Plaintiff-wife with USCIS.  (ECF No. 1 ¶ 39.)   USCIS approved the petition and forwarded it to the National Visa Center ("NVC").  *Id.* ¶ 40.  On March 14, 2020, NVC created an immigrant visa case for Plaintiff-wife and on April 20, 2020, Plaintiff-wife filled out the Form DS-260 application.  *Id.* ¶¶ 41-42.  On January 22, 2020, Plaintiffs' case was documentarily qualified and NVC was awaiting an interview appointment notice for the U.S. Consulate in Monrovia, Liberia.  *Id.* ¶ 43.

On August 11, 2021, Plaintiffs requested expedited processing of Plaintiff-wife's interview because Plaintiff-husband had a job offer in Vermont and Plaintiff-wife's help was needed for the care of their minor daughter.  (ECF No. 1 ¶ 44.)  On November 1, 2021, Plaintiffs made a National Interest Exemption request to the U.S. Consulate in Monrovia, Liberia, and the NVC.  *Id.* ¶ 45.  Plaintiff-husband's parents made a congressional inquiry on behalf of Plaintiff-wife's immigrant visa application.  *Id.* ¶ 46.  On December 4, 2021, based on the congressional inquiry, Plaintiffs were informed the appointment could not be expedited.  *Id.*  Plaintiffs allege that they reached out to NVC in August 2021 and September 2022, and that NVC informed them their case was documentarily qualified and they were awaiting an interview appointment.  *Id.* ¶ 47.  On November 4, 2022, Plaintiffs' minor daughter was scheduled for reconstructive surgery and was scheduled to be out of school and under medical observation for at least six weeks.  *Id.* ¶ 48.

Plaintiffs allege that over the past 18 months, Plaintiff-husband and his family have made several attempts to resolve the delay through requests to Defendants.  (ECF No. 1 ¶ 49.)  Plaintiffs allege that Defendants have not acted and, due to the delay, Plaintiff-wife's application remains

---

[2] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Complaint.

pending with DOS. *Id.* ¶ 50. Plaintiffs allege that Plaintiff-wife has completed all necessary steps regarding her visa application and is awaiting an interview. *Id.* ¶ 51.

On October 3, 2022, Plaintiffs filed the instant Complaint. (ECF No. 1.) The Complaint sets forth two counts against all Defendants: (1) Violation by DOS of the Administrative Procedure Act at 5 U.S.C. § 555(b) for failure to act "within a reasonable time;" and (2) Mandamus Action to Compel Officers of DOS to Perform Their Duty pursuant to 28 U.S.C. § 1361. *Id.* at 13. The prayer for relief seeks: (i) an order compelling Defendants "to complete the processing of Plaintiff-wife's immigrant visa application;" (2) an order compelling "Defendants to complete all necessary steps and adjudicate Plaintiff-wife's immigrant visa application within forty-five (45) days from an [o]rder of this [c]ourt;" (3) any other relief this court deems proper; and (4) attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"). *Id.* at 15.

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 6-1.) Defendants argue both Plaintiffs' claims fail because the delay alleged by Plaintiffs is not unreasonable as a matter of law. *Id.* at 7.

## III.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(d)

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. "A motion with this caption implicates the court's discretion under Fed. R. Civ. P. 12(d)." *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022). Federal Rule of Civil Procedure 12(d) provides, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule

56." FED. R. CIV. P. 12(d). "Pursuant to Rule 12(d), the Court has discretion to determine whether to accept evidence outside the pleadings, and thus convert a Rule 12(b)(6) motion to a Rule 56 motion." *Coleman v. Calvert Cnty.*, No. GJH-15-920, 2016 U.S. Dist. LEXIS 130420, at *8 (D. Md. Sept. 22, 2016) (citations omitted).

"There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'" *Snyder,* 2022 WL 980395, at *4 (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Second, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Interest Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

The instant action is in its infancy; and there has been no discovery. At this stage, the court declines to convert the Motion to one for summary judgment. Accordingly, the court will construe the Motion under Rule 12(b)(6).

### B.      Federal Rule of Civil Procedure 12(b)(6)

"'The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Accordingly, a "Rule 12(b)(6) motion should only be granted

if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling [her] to relief." *Edwards*, 178 F.3d at 244 (*citing Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "A complaint that provides no more than 'labels and conclusions,' or 'formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. PX-21-1637, 2021 U.S. Dist. LEXIS 221041, at *4 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

IV.    **ANALYSIS**

A.    **Consideration of Exhibits**

As an initial matter, Defendants attach one exhibit to their Motion: Exhibit 1 – Declaration of Chloe Peterman. (ECF No. 6-2).

A court may consider documents attached to a motion to dismiss if the document is "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir.

2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).   "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'"  *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).   "In addition to integral and authentic exhibits, on a 12(b)(6) motion the court 'may properly take judicial notice of matters of public record.'"  *Id.* (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).   Specifically, the court may take judicial notice of publicly available information on state and federal government websites without converting the motion to one for summary judgment.  *See U.S. v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on the state and federal government websites.").

Exhibit 1 is a Declaration of Chloe Peterman,[3] which provides information regarding visa services at the U.S. Embassy in Monrovia, Liberia, and information related to Plaintiff-wife's Form I-130 petition.  (ECF No. 6-2 ¶¶ 3-7.)  In some instances, courts "have considered such supplemental evidence of the ostensible reason for any processing delay—COVID-related State Department service suspensions and backlogs—in connection with motions to dismiss."  *Ahmed v. U.S. Dep't of Homeland Security*, No. 21-cv-893 (APM), 2022 WL 424967, at *4 (D.D.C. Feb. 11, 2022).  Other courts caution against considering declarations without converting the motion to one for summary judgment because consideration of the arguments set forth in the declaration requires that the court engage in a "fact-intensive inquiry" inappropriate under Rule 12(b)(6).  *Id.*; *see Begum v. United States Dep't of State*, No. 22-cv-00478-JMC, 2022 WL 16575703, at *6 (D. Md. Oct. 31, 2022) (declining to consider declaration by DOS official on a motion to dismiss).  As

---

[3] Chloe Peterman is employed by the U.S. Department of State as an Attorney Adviser in the Office of Legal Affairs for the Bureau of Consular Affairs.  (ECF No. 6-2 ¶ 1.)

discussed in more detail below, the analysis in the instant case requires the court to assess the reasonableness of the agency delay by applying the six factors set forth in *Telecommunications Research & Action Center v. FCC (TRAC)*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("TRAC Factors").

In the present case, Plaintiffs suggest that application of the TRAC factors is premature at this stage. (ECF No. 7 at 4.)  In *Begum*, the court addressed a similar concern raised by the plaintiff. 2022 WL 16575703, at *6.  There, the defendants, like Defendants here, filed a motion to dismiss or, in the alternative, for summary judgment and attached a declaration by a DOS official explaining the reasons for the delay.  *Id.* at *1, 6.  The *Begum* court construed the motion as a motion to dismiss, declined to consider the declaration by the DOS official, and proceeded to analyze the TRAC factors.  *Id.*  Specifically, the *Begum* court explained:

> Although other courts have considered such evidence in connection with motions to dismiss, the court in *Ahmed* declined to do so in light of the D.C. Circuit's instruction that the unreasonable-delay analysis under TRAC is a fact-intensive inquiry. Although the court refused to take judicial notice of the defendants' ostensible explanation for the delay, the court proceeded to apply the TRAC factors.  Refusing to consider such evidence and declining to convert the motion into one for summary judgment is not to say that a plaintiff automatically survives a motion to dismiss by merely alleging that a processing delay is unreasonable.  A plaintiff in such a case is still subject to the standard for pleadings under *Twombly* and *Iqbal*. Therefore, the Court must determine whether [Plaintiff's] complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay.

2022 WL 16575703, at *6 (internal citations and quotations omitted).

The court finds the *Begum* court's analysis logical and persuasive.  Accordingly, the court will not consider the Peterman Declaration and will consider the TRAC factors to determine whether Plaintiffs have "alleged sufficient facts to state a plausible claim for unreasonable administrative delay."  *See Begum*, 2022 WL 16575703, at *6 (considering TRAC factors on a motion to dismiss); *Ahmed*, 2022 WL 424967, at *5 (same).

B.      TRAC Factors

Defendants argue that Plaintiffs' claims fail because the alleged delay is not unreasonable as a matter of law.  (ECF No. 6-1 at 7.)

The Administrative Procedure Act, 5 U.S.C. § 555(b), provides that an agency "within a reasonable time . . . shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  A claim brought pursuant to 5 U.S.C. § 706(1) "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *North v. Southern Utah Wilderness All.*, 542 U.S. 55, 64 (2004).  "If an agency fails to comply with this requirement, the APA authorizes courts to 'compel agency action unlawfully withheld or unreasonably delayed . . .'" *Begum*, 2022 WL 16575703, at *5 (D. Md. Oct. 31, 2022) (quoting 5 U.S.C. § 706(1)).  "The standard by which a court reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act, 28 U.S.C. § 1361." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017).  "The central question in evaluating a claim of unreasonable delay is 'whether the agency's delay is so egregious as to warrant mandamus.'" *Id.* at 152 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)).

"There is no per se rule as to how long is too long to wait for agency action." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004).  Therefore, in assessing the reasonableness of an agency delay, courts apply the six TRAC factors enunciated in *Telecommunications Research & Action Center v. FCC (TRAC)*, 750 F.2d 70, 80 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.*

### 1.     TRAC Factors One and Two

"The first factor is the most important TRAC factor, and is typically considered together with the second TRAC factor." *Arab v. Blinken*, 600 F. Supp. 3d 59, 69 (D.D.C. 2022).   In analyzing the first two TRAC factors, the court focuses on "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. United States Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014); *see Begum*, 2022 WL 16575703, at *7 (explaining the first two factors "focus on the reasonableness of the delay and whether Congress has set a timeline for the completion of the action in question").   "There is no statutory or regulatory timeline that provides a 'rule of reason' to govern the State Department's adjudication of a visa application." *Ahmed*, 2022 WL 424967, at *5.   Instead of providing such timeline, "Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017); *see Alshawy v. U.S. Citizenship and Immigr. Servs.*, No. 21-2206 (FYP), 2022 WL 970883, at *5 (D.D.C. Mar. 30, 2022) (explaining that Congress gave the State Department broad authority with regard to visa applications, "specifically omitting 'substantive standards against

which the Secretary's determination could be measured'") (quoting *Legal Assistance for Vietnamese Asylum Seekers v. U.S. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997)).

With this in mind, courts look to case law as a guide. "District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Sarlak v. Pompeo*, No. 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). "Many courts have 'declined to find a two-year period to be unreasonable as a matter of law[,]' especially when the agency provides a reasonable explanation for the delay and 'regularly revisit[s] the question' of whether visa processing can proceed." *Begum*, 2022 WL 16575703, at *7 (quoting *Ghadami v. United States Dep't of Homeland Sec.*, No. 19-00397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020)). The court analyzes the relevant period of delay by calculating the "earliest possible time that the Embassy could have scheduled the interview." *Alshawy*, 2022 WL 970883, at *6 (D.D.C. Mar. 30, 2022). Additionally, courts tend to "focus on the delay' from the last Government action 'to the issuance of the opinion'" as opposed to the date of the complaint filing. *Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21-1262 (RC), 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021) (quoting *Brzezinski v. U.S. Dep't of Homeland Sec.*, No. CV 21-376, 2021 WL 4191958, at *4, n.3 (D.D.C. Sept. 15, 2021)).

Defendants argue that the 21-month delay in this case is not unreasonable. (ECF No. 6-1 at 9.) Defendants also assert that the delay is due to the health and safety measures that were put in place to protect individuals during the global pandemic. *Id.* at 10. In response, relying on *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, No. 21-151, 2022 WL 2966333 (D.D.C. July 27, 2022), Plaintiffs argue that the court should decline to accept COVID-19 as a reason for the delay without more information as to how the pandemic affected the U.S. Consulate in Monrovia, Liberia. (ECF

No. 7 at 5.)  Plaintiffs further argue that their situation is unique in that it involves the emotional, physical, and psychological well-being of their minor children.  *Id.* at 6.

In *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, the plaintiffs' visa petition was approved in August 2013 and forwarded to NVC; subsequently, the plaintiffs submitted their Form DS-260, and were interviewed by the Embassy in October 2016.  617 F. Supp. 3d 1, 6 (D.D.C. 2022).  At the interview, the plaintiffs were advised that their applications required further administrative processing.  *Id.*  Over the course of the following eight years, the plaintiffs inquired into the status of their application to no avail.  *Id.*  On June 4, 2021, the *Al-Gharawy* plaintiffs filed a complaint in the United States District Court for the District of Columbia.  *Id.* at 7.   The defendants moved to dismiss for lack of subject matter jurisdiction and failure to state a claim.  *Id.* at 7.  With regard to the motion to dismiss for failure to state a claim, the defendants argued that the delay in processing the plaintiffs' visa applications was not unreasonable.  *Id.* at 17.  The *Al-Gharawy* court disagreed and denied the motion to dismiss.  *Id.*

Plaintiffs' reliance on *Al-Gharawy* is misplaced.  In *Al-Gharawy*, the court noted that application of the TRAC factors is generally considered premature at the motion to dismiss stage because it "requires the court to wade through the particular facts and circumstances of an agency's delay."  617 F. Supp. 3d 1, 18 (D.D.C. 2022).  Instead, the *Al-Gharawy* court proceeded with an abbreviated review of the TRAC factors solely to demonstrate that the court lacked "a sufficient basis to hold, at the motion to dismiss stage, that [the] [p]laintiffs [] failed to state a plausible claim of unreasonable delay."  *Id.*

With regard to the first and second TRAC factors, the *Al-Gharawy* defendants maintained that there was an attack on the facility in January 2020 and that the COVID-19 pandemic continued to affect the availability of routine visa services.  *Al-Gharawy*, 617 F. Supp. 3d at 18.  The court

concluded that "COVID-19 cannot excuse the suspension of consular services indefinitely, and, [the] [d]efendants have not provided sufficient information to permit the [c]ourt to understand how pandemic conditions affect services at the Embassy at Baghdad specifically." *Id.* at 18-19. The *Al-Gharawy* court's rejection of the pandemic as a basis for delay was, in part, because "[p]laintiffs' applications had been pending for nearly three-and-a-half years before the beginning of the pandemic." *Id.* at 19. Indeed, the *Al-Gharawy* plaintiffs proceeded with their interviews and their applications remained pending for almost six years thereafter. *Al-Gharawy*, 617 F. Supp. 3d at 6. *Al-Gharawy* is materially distinguishable from the instant case.

Here, Plaintiff-husband filed his I-130 Petition on February 4, 2019, and NVC created an immigrant visa case for Plaintiff-wife on March 14, 2020—the beginning of the COVID-19 pandemic. Plaintiff-wife was not eligible for an interview until March 2020. This bears no favorable resemblance to *Al-Gharawy*.

The court finds helpful instruction from *Begum v. United States Dep't of State*, 2022 WL 16575703 (D. Md. Oct. 31, 2022). There, the plaintiff's case became documentarily qualified and NVC sent the case to the Embassy for an interview in January 2020. 2022 WL 16575703, at *2. On February 28, 2022, the plaintiff had still not had an interview and the plaintiff filed a complaint in the United States District Court for the District of Maryland. *Id.* at *7. On the defendants' motion to dismiss the plaintiff's APA claim and request for writ of mandamus, the *Begum* court addressed the first two TRAC factors as follows:

> Only slightly more than two years (25 months) passed from the transfer of the application to the Embassy (January 10, 2020) to the filing of the case sub judice (February 28, 2022). Even measuring until the date that this opinion is issued, only thirty-three months have passed since the visa number became current.
> …
> Assuming, *arguendo*, that the date at which the Court should begin to measure the delay is June 2019 (the date the NVC began

13

> processing the visa application), the delay still cannot be considered
> unreasonable. From June 2019 until the issuance of this opinion,
> only forty months have passed.
>
> …
>
> . . . [p]laintiff here has offered no other facts that would allow this
> [C]ourt to measure the reasonability of the Government's delay.
> Plaintiff points to nothing specific about the relevant visa
> application to distinguish it from the multitude of similar cases. Nor
> has [p]laintiff offered any evidence indicating that [d]efendants have
> treated her son differently from other applicants, such as pointing to
> similarly situated applicants whose applications were adjudicated in
> a shorter amount of time.

2022 WL 16575703, at *7-8 (internal citations and quotations omitted).  Accordingly, the court

concluded that the first two TRAC factors favored dismissal. *Id.* at *7.

Here, the earliest possible time the Embassy could have scheduled Plaintiff-wife's

interview at the U.S. Consulate in Monrovia, Liberia was January 22, 2021, and Plaintiffs filed

this action on October 3, 2022—a span of approximately 20 months.  If the court includes in that

calculation the span of time between the initiation of the instant action and the date this opinion is

issued, approximately 30 months have passed since the Embassy could have scheduled the

interview.  While the court appreciates the emotional turmoil and frustration Plaintiffs have surely

experienced during this timeframe, this length of delay is not administratively unreasonable. *See*

*Begum*, 2022 WL 16575703, at *8 (finding that 33 months is not unreasonable); *Tekle v. Blinken*,

No. 21-cv-1655 (APM), 2022 WL 1288437, at *3–4 (D.D.C. Apr. 29, 2022) (same).  Even were

the court to consider the date on which the NVC create the immigrant visa case (in March 2020),

the delay is still not administratively unreasonable.  From March 2020 until the issuance of this

opinion, 40 months have passed. *See Begum*, 2022 WL 16575703, at *8 (finding 40-month delay

not unreasonable); *Pourshakouri v. Pompeo*, No. 20-cv-00402 (RJL), 2021 WL 3552199, at *8-9

(D.D.C. Aug. 11, 2021) (finding delay of 44 months reasonable).

Defendants have further provided an identifiable rationale—specifically, Defendants maintain that "the delay here is due to reasonable and prudent measures to protect safety and health.  While the global COVID-19 pandemic continues to recede, the Consular Section at the U.S. Embassy in Monrovia, as with many locations around the world, is working diligently to resolve the significant backlog that developed during the pandemic." *See Siddiqui v. Blinken*, No. 21-cv-02470 (CJN), 2022 WL 17744079, at \*4 (D.D.C. Dec. 14, 2022) (finding that the government provided an identifiable rationale by providing that government resources were stressed during the pandemic and nonimmigrant visa services were resuming in limited numbers); *Akrayi v. United States Dep't of State*, No. 22-cv-1289 (CRC), 2023 WL 2424600, at \*4 (D.D.C. Mar. 9, 2023) (concluding that a three year delay is not unreasonable when considering the backlog of cases due to COVID-19 and the reduced visa processing worldwide).  While Plaintiffs assert that the court should not accept the generalized COVID-19 claims when evaluating reasonableness, courts routinely consider the impact of COVID-19 on the State Department's resources for visa processing.  *Akrayi*, 2023 WL 2424600, at \*4; *see Dastagir v. Blinken*, 557 F. Supp. 3d 160, 166 (D.D.C. 2021) (explaining that "[i]ssues like a pandemic and local government restrictions are out of the control of the Government and are justifications for delay that the Court is ill-equipped to second guess"); *Rahimian v. Blinken*, No. 22-785, 2023 WL 143644, at \*7 (D.D.C. Jan. 10, 2023) (finding the 41 month delay not unreasonable and the "backlog and ongoing public health considerations impacting consular staff operations" favor the defendants on the first two TRAC factors); *Logan v. Blinken*, No. 21-2275, 2022 WL 3715798, at \*5 (D.D.C. Aug. 29, 2022) (considering that the delay in the visa process is due to the ongoing global pandemic and concluding that the thirteen month delay is reasonable in light of pandemic); *Murway v. Blinken*,

No. 21-1618, 2022 WL 493082, at \*3 (D.D.C. Feb. 16, 2022) (finding that "operational delays due to the COVID-19 pandemic favor the Government on the first two factors").

While the court is sensitive to the nature of the circumstances in this case and the familial interests at stake, Plaintiffs fail to distinguish this case from the many other cases involving considerably longer delays and do not cite to cases with "similarly situated applicants whose applications were adjudicated in a shorter amount of time." *See Begum*, *supra.* Accordingly, the first two factors weigh in favor of Defendants.

### 2.       TRAC Factors Three and Five

"'The third and fifth factors are often considered together, and require the [c]ourt to consider Plaintiffs' interests, health, and welfare,' and the prejudice to those interests from delay." *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 12 (D.C. Cir. 2021) (quoting *Thakker v. Renaud*, No. 20-cv-1133 (CKK), 2021 WL 1092269, at \*7 (D.D.C. Mar. 22, 2021) (citation omitted)).

Plaintiffs maintain that factors three and five weigh in their favor because the welfare of their daughter is at stake. (ECF No. 7 at 8.)  The court agrees.  The delay in the instant case has caused Plaintiff-wife to be separated from family members and her minor daughter. *See Liu*, 544 F. Supp. 3d at 12 (finding that factors three and five weigh in favor of the plaintiffs "who have clearly alleged that the delay has caused them to be separated from family members"); *Begum*, 2022 WL 16575703, at \*9 (concluding that factors three and five weigh in favor of the plaintiff because the plaintiff has been separated from her son and his family); *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021) (finding that factors three and five weigh in the plaintiff's favor because the plaintiff's have been separated from friends, family, and loved ones and in some cases endangered the plaintiffs' careers and livelihoods).  Accordingly, factors three and five weigh in favor of Plaintiffs.

### 3.     TRAC Factor Four

The fourth TRAC factor considers "how a court order in [the] [p]laintiff's favor would shift existing agency priorities." *Ahmed*, 2022 WL 424967, at \*6.  The fourth factor carries significant weight. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1101 (D.C. Cir. 2003) (noting that the court has "refused to grant relief, even though all the other factors considered in TRAC favored it, where 'a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain'") (quoting *In re Barr Laboratories, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)).  It "requires an assessment of the impact that expediting the delayed action would have on other agency priorities . . . ." *Logan v. Blinken*, No. 21-2275 (FYP), 2022 WL 3715798, at \*6 (D.D.C. Aug. 29, 2022).  Court intervention is typically "unwarranted where 'a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.'" *Id.* at \*6 (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100); *see Begum*, 2022 WL 16575703, at \*8 (finding that the fourth TRAC factor weighs in favor of the defendants when the "[p]laintiff seeks to compel the issuance of a visa and jump past all others who are undergoing the application procedure"); *Nusrat*, 2022 WL 4103860, at \*7 (explaining that the fourth TRAC factor is fatal to the plaintiff's claim of unreasonable delay because  the "[d]efendants, not this [c]ourt, are best positioned to understand the continued effect of the pandemic on their operations, the entire backlog of visa applications, [and] the competing demands on involved personnel") (quoting *Liu*, 544 F. Supp. 3d at 13).

As in *Begum*, Plaintiffs seek to compel the issuance of a visa and effectively go to the front of the line.  2022 WL 16575703, at \*9; *see Nusrat*, 2022 WL 4103860, at \*7 (finding that the plaintiff "effectively asks the [c]ourt to 'reorder agency priorities' and 'move all others back one

space and produce no net gain,' something courts look upon with 'disfavor'") (internal citations omitted)).   While Plaintiffs maintain that their situation is unique as it relates to their minor daughter, numerous cases tell of families enduring separation of the sort at issue here.  *See Begum*, 2022 WL 16575703, at *9 (noting that "the processing delay has profoundly impacted the lives of [p]laintiff and [p]lantiff's family"); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020) (granting motion to dismiss while noting the familial interests at stake).   Ultimately, the relief that Plaintiffs seek is simply what courts seek to avoid—a reordering of the queue of applicants when no net gain in such adjudications is achieved.  *Tate*, 513 F. Supp. 3d at 149.   The court, while acknowledging the agony of family separation where children are involved, finds that factor four weighs in favor of Defendants.

### 4.     TRAC Factor Six

The sixth factor "reminds courts that they 'need not find any impropriety . . . to hold that agency action is unreasonably delayed.'"  *Meyou v. U.S. Dep't of State*, No. 21-2806, 2022 WL 1556344, at *5 (D.D.C. May 17, 2022) (quoting *TRAC*, 750 F.2d at 80).   Plaintiffs do not allege that Defendants have acted in bad faith.   Accordingly, factor six is neutral.  *See Dastagir v. Blinken*, 557 F. Supp. 3d 160, 168 (D.D.C. 2021) (concluding sixth factor is neutral when the plaintiff does not assert bad faith); *Begum*, 2022 WL 16575703, at *9 (finding sixth factor neutral because the plaintiff has not alleged bad faith).

## V.     CONCLUSION

Considering the TRAC factors together, for the reasons set forth above, the court concludes that Plaintiffs fail to state a plausible unreasonable delay claim.  *See Mirbaha v. Pompeo*, 513 F. Supp. 3d 179, 186 (D.D.C. 2021) (granting the motion to dismiss in light of the fact that the plaintiff had been diagnosed with a medical condition that required her pursue parenthood sooner

rather than later and the plaintiff's inability to travel and live in the United States threatens the plaintiff's ability to conceive a child); *Begum*, 2022 WL 16575703, at *7 (granting motion to dismiss while considering the plaintiffs' harm from family separation).

The court recognizes the unimaginable hardship Plaintiffs face; however, such "hardship they suffer 'is outweighed by the rule of reason supplied by case law and the fact that granting relief would be at the expense of others without any net gain.'" *Meyou*, 2022 WL 1556344, at *5 (quoting *Tekle*, 2022 WL 1288437, at *5).  Accordingly, by separate order, the Motion will be granted.

/S/

_____

Julie R. Rubin
United States District Judge

July 26, 2023